The briefing on this appeal has narrowed the issues considerably. The parties all agree that this court can apply subsection 2 and vacate and remand to C2C if the IDR determination was procured by fraud or undue means. Kaiser only argues that REACH did not adequately plead fraud. But an insurer's QPA, which represents the median contracted rate for air ambulance services, is a central input into the IDR process. And REACH alleged that Kaiser engaged in a scheme to misrepresent its QPA, initially providing a higher number to REACH in its explanation of payment and then a lower number in its submission to the IDR entity. At least one of these must be false. And the end result was that Kaiser induced the IDR entity to credit its offer as more reasonable than it really was. The district court did not explain why these allegations were inadequate. It did not clarify how it was applying the pleading standard. It did not directly acknowledge the nature of the misrepresentation alleged or state why it does not rise to the level of fraud or undue means. If an insurer affirmatively misrepresenting its QPA is not fraud, then it is difficult to imagine what would count in the No Surprises Act context. This court should clarify that the facts alleged are sufficient to state a claim under subsection 2 of the No Surprises Act. So to understand why this two QPA scheme necessarily rises to the level of fraud, it's helpful to review just how many safeguards Congress put in place to ensure that QPAs are calculated correctly and that there is transparency around those calculations. First, there's an extensive statutory and regulatory scheme that provides specific parameters for calculating the QPAs. Then, at the time that it makes its initial payment, the insurer is required to disclose the QPA and certify that it was calculated in accordance with those regulatory requirements. One of the options, assuming you're correct that Kaiser did not provide the required information in support of its QPA, what remedies are there either within or before you get to the IDR process? This is happening on a very expedited timeframe, and the only opportunity that we have to request further information or detail about the QPA we exercise in this case. The provider is allowed to ask for certain information about the calculation of the QPA. That includes whether it was, in this case, divided into a base and mileage rate based on the in-network agreements or whether it was based on in-network agreements for a whole rate, whether there were bonus payments, other relevant material that would have allowed us to assess the basis for the QPA. But Kaiser refused to provide that. That's all that the regulations and statute provide for. Then, the parties have to make simultaneous blind submissions to the IDR entity, which then has 20 days to issue its determination. We don't know. We don't have any other discovery tools. We have no other means of discovering anything about the way that the QPA is being calculated. We don't even know what Kaiser is saying when it makes its submission. Were you able to raise those issues in your submission to the IDR, or is it simply a number that you provide? We're free to include additional information in our submissions to the IDR entity, but we would not have any way of knowing that the initial QPA that was disclosed to us was in any way in doubt. I understand that, but were you able to say we didn't receive the information from Kaiser in support of the QPA that we were entitled to, or did you say that? I don't know whether we said that in this particular case. I think, in theory, we could say that, but, again, this is a high-volume, extremely streamlined process. Kaiser is the one that's actually certifying the accuracy of its QPA, and it's submitting that to the IDR entity. And the IDR entity, on the face of the decision, it's clear that it credited Kaiser's number for what its QPA is and then relied on that in making its decision. Backing up, obviously, the district court, I think, thought that the long section name, which I shall not read because it will take a minute of your argument time, does not create a separate ground for judicial review. Why do you disagree with the district court on that point? Are you referring to subsection 1?  I would grant that this is a complicated and novel statute. We think that the best reading of subsection 1, at a minimum, is that it provides that the awards are binding, meaning enforceable in court, and then that it has that language in the absence of a fraudulent claim or a misrepresentation of facts. Let's take the first part first. It can be binding and still not provide a private right of action, right? It could be binding as, say, a defense. We've got other statutes where a decision is binding, but that doesn't mean that the party who has a decision can bring a court action to enforce it. First, I would say that precise issue is on appeal before the Fifth Circuit and was recently briefed and argued. We think that the language binding, actually, in the context of arbitration agreements specifically, there's a long history of courts holding that where parties say that an arbitration is to lead to a binding determination, that necessarily encompasses agreement to enforcement in court. Again, we also believe that it would be fruitless for Congress to have channeled parties into mandatory IDR and then get to the other end of that process and not have the providers, if they win the right to additional payment, be able to enforce that. The United States government did actually weigh in in the Fifth Circuit appeal and agreed that it should provide a private right of action. We think, and that's our view of the most obvious function that Subpart 1 is playing. It's making these awards binding and enforceable. Then, if an insurer wants to raise as a defense in that proceeding that there was a fraudulent claim or a misrepresentation of fact, that would be a defense to the enforceability of that judgment at a minimum. Then, as we lay out in our reply brief, we also think that to be even-handed, it would make sense to allow providers to take advantage of that language, that if there's a misrepresentation of fact to the IDR entity, that the award is not binding and that leads to impractical effects, vacater, and order. Let me ask you the question this way. Even assuming, arguendo, that you were right and that there was a private cause of action created, what difference would it make anyway? The reason I raise the question is it's not at all clear to me from looking at Subsection 1 that it would provide anything more meaningful in terms of relief for challenges of IDR entity determinations than would not otherwise be available under the second clause. One lists only a fraudulent claim or evidence of misrepresentation. On the other hand, a vacater of an arbitration award could occur where an award was procured by corruption, fraud, or undue means. What's the difference? We agree that for purposes of this case, this court doesn't actually have to resolve what Subsection 1 is saying with respect to a private right of action, that it can rely on Subsection 2. I think whether there's a material difference between misrepresentation . . . If you're wrong on Section 2, it hardly matters. We would have no reason to address Section 1. And if you're right about Section 2, we still would have no occasion to answer that question. Well, so I think if you . . . I think, and help me with that. If you agree that we have adequately pleaded fraud under Subsection 2, then the court does not need to address Subsection 1 and whether it separately would afford a basis for vacater. Because at that point, we would have relief, right? We would obtain vacater of the IDR determination and a remand for further proceedings. So, if we lose under Subsection 2 and you think that we haven't adequately pleaded fraud, then you would turn to Subsection 1 and determine whether we stated a claim under that, what that . . . Strikes me as maybe they're a little different. Maybe they're not coextensive, but they sure overlap a whole bunch. We 100% agree that they sure overlap a whole bunch. And I don't think that this is a case in which the court needs to . . . There may be hypothetical factual scenarios that satisfy misrepresentation, but not fraud. But we think that we satisfy fraud, which if one is a more . . . So, this is a roundabout way of saying if you're right on 2, it doesn't matter. If you're wrong on 2, it doesn't matter and we don't have to address the issue. Is that right or have I misapprehended what you're saying? So, I think, I guess to clarify, we, you know, we think that we are right under Subsection 2. The other side is arguing that Subsection 2, because it invokes the FAA, imposes effectively an irrebuttable presumption that, you know, we lose. We don't think that that's what this court's FAA precedents stand for. And so, we think that we have adequately pleaded fraud under that, under Subsection 2, whether or not you bring along the FAA case law under cases like Bonar and Nuvasiv. If a party commits fraud and the other side has used all of the tools at their disposal to try to uncover the fraud and they weren't able to discover it, then that is grounds for vacater. But if you disagree that we pleaded that, then I think the court needs to address the misrepresentation language in Subsection 1. And at that point, it would have to opine on whether there was a difference between those two standards or whether our failure to meet Subsection 2 also means that we failed to meet Subsection 1 or whether there's some different standards. Let me ask you this as a follow-up. Did you say that the IDR improvidently created a presumption, an irrebuttable presumption? Where did they do that? I looked at the language, the full quote, and it didn't seem to me that that created an irrebuttable presumption. So, tell me what language. Can you point to that suggests that they erected this kind of presumption? So, the language that we cite in paragraph 34 in our complaint, the second paragraph there, says that the IDR entity considered all of the circumstances and facts that have been brought to its attention and that those did not support the allowance at anything higher than the QPA. So, in our view, that suggests that there's a presumption. But at a minimum, I think it shows that the QPA was highly material to the IDR entity's determination, which goes back to our point of satisfying fraud under Subsection 2. Thank you. Good morning, Your Honors, and may it please the Court. Mo Keshavarzi for Kaiser Foundation Health Plan. Your Honors, Congress enacted the NSA to end market dysfunction and to stop air ambulance companies from balance billing, a practice which, for years, they used as leverage to force health plans to pay excessive rates. And to address disputes that it knew would arise once the new law went into effect, Congress borrowed from the Federal Arbitration Act to create a dispute resolution process that is supposed to be quick, efficient, with access to courts limited, except in the most extraordinary circumstances. Circumstances that are not present here. Your Honor, when Congress adopted the FAA in Subclause 2, it brought with it the body of law interpreting for years the Federal Arbitration Act and basis for review under the Federal Arbitration Act. In order to vacate an arbitration award under that standard, appellants must show that there was clear and convincing evidence of fraud. They must show egregious conduct and there's a presumption in favor of the arbitration award. Those allegations are not present in their complaint. Those allegations were not made by appellants in the complaint they filed. And the District Court gave them a chance to amend and they declined. They say that there's no answer besides fraud. I don't know that I necessarily saw a clear answer in your briefing about what you think could account for the difference. Can you explain that a little bit to us here? Sure, Your Honor, and I think one explanation would be in the words of appellants themselves at the District Court. At oral argument before Judge Corrigan, and this is the appendix at number 59 or the docket at 59 at page 33, they conceded that they don't know whether this was an error or intentional. That they did not know whether it was an error or intentional. And they said they wanted to do discovery to find out. And what they told Judge Corrigan was that in those early days of the NSA, let's recall the NSA went into effect in January 1 of 22. There was an all-out assault on the system by the air ambulance companies. There were lawsuits filed to challenge the law. And once the system went live, the system was overwhelmed with claims and then lawsuits to challenge the results. The system went live on April 15, 2022. In those early days of the NSA, given the lawsuits pending, challenges to how QPAs are supposed to be considered, there was confusion in terms of how to calculate the QPA. What you needed to calculate and what needed to be put in an IDR submission or what needed to be disclosed to providers. CMS has documented this in reports and audits that it has done. And we noted this in our briefs. And REACH appellants conceded this at the trial court. So, Your Honor, there are many things that could explain why there would be an inconsistent QPA. It could be that one of them was not the QPA and there was no allegation. One thing I would note, Your Honor, is that the allegation with respect to what was allegedly disclosed or represented to REACH is in paragraph 28 of the complaint. It doesn't say how Kaiser told them that the offer was a QPA. All it says is that, and that's one of our arguments for why Rule 9 hasn't been satisfied. Paragraph 28 only says that Kaiser represented that its offer was a QPA. It does not say where. It does not say how. It does not say when. It doesn't say who at Kaiser said that the offer is a QPA. Those allegations are absent from the complaint. So, Judge Grant, the answer to your question is there are many things that were happening at the time. There was people did not, the industry did not understand or did not know fully how to calculate QPAs and what needed to be done. In fact, that's one of the allegations in the complaint. Right after alleging that Kaiser misrepresented the QPA, they allege that CMS was reporting that health plans were not calculating the QPA correctly and didn't know what to do. What you have is at most an allegation about a mistake, an error, and that could be explained by the chaotic days when participants were unaware of their obligations under this nascent law. I assume that you don't think that kind of that version of the facts would qualify either under subsection 1 or subsection 2. But do you think that there is some difference in the meaning of the terms fraudulent claim or evidence of misrepresentation of facts versus an award being procured by corruption, fraud, or undue means? Is there some delta between those two things? The way I would answer the question is this. Your Honor, it is, I think we would agree that how subclause 1 and subclause 2 work together is somewhat ambiguous. The law is somewhat ambiguous. But what is not ambiguous, what could not be more clear is the preface, the starting phrase in subclause 2, there shall not be any judicial review except that is a divestiture of all jurisdiction except what follows. What follows are a case arising under the four subsections of the FAA, 10A, 1 through 4. So what does subclause 1 mean? One interpretation, Your Honor, would be as you noted that it means essentially the same thing, that's intentional fraud. And if the court were to harmonize the two subclauses that way, that subclause 1 means intentional fraud such that it satisfies the high burden under subclause 2. That would be one way to harmonize it. As long as the court brings with it the body of law that Congress clearly intended to be brought over with subclause 2. Another way to harmonize subclause 1 with subclause 2, Judge Grant, would be what you noted earlier, which is that Congress created a right without a judicial remedy. Subclause 1 begins by making clear that an IDR award is binding. It's not like another commercial arbitration in a different context where a party has to apply to a court to make it a binding and enforceable award. Let me follow up with a question on that. So as you say, this is a complicated statute. Is there another place in the statutory scheme where there's just a straightforward enforcement action ability? Let's say if Kaiser did not pay the air ambulance company, is there another place where they can not challenge the amount of the award or how it was reached, but just say the process says the U.S. has money, you haven't paid it, give us that? That's a great question, Your Honor, and it's a question that's being answered by courts throughout the country right now. The law is silent on that. There's an investigation right now in various courts throughout the country, Connecticut, New Jersey, New York, Texas, where there's disputes about whether or not there is a private right of action for enforcement. Would it be, is the only potential source of that private right subsection 1 that we're talking about, or in other cases are there arguments about different parts of the statute? Your Honor, the arguments that have been made in support of such a right have to do with what Congress created was the language of the statute, subclause 1, and in other places, Congress created a right, and that right must be enforceable. That's how the argument's been made. It's based in part on the language that an award under subclause 1 is binding, but that's not the only thing that's been cited, and there are multiple arguments that have been made. I would also note, Your Honor, that this is not like a normal dispute resolution process that Congress creates and sends the parties to do what they wish and leaves it to the courts to decide the disputes. CMS plays an extremely active role in this case. We submitted for Your Honor's request for you to consider supplemental authority, a report that CMS issued in August of 2024, noting that it had levied significant fines for various issues and noted that it collected payments that were made to consumers and to providers. That's in the document that we submitted to Your Honors, and there are violations of the law being identified and fines being levied by CMS, not just on the payer side. In fact, there are more violations of law on the provider side, and CMS is policing both. The law also has a mechanism. It requires states to police QPA issues and calculations for health plans within the state, and if CMS finds out that a state is not doing it, it must step in and deal with that. CMS has an obligation, a mandatory obligation, to do audits of health plans, so there are mechanisms built in and safeguards that are built in. Let me ask you about a different area. Do you agree that Reach sufficiently alleged that Kaiser failed to comply with the disclosure and negotiation processes? No, Your Honor, I don't, and if you look at the complaint, Your Honor, and I believe this is in Paragraph 28, this is Appendix 1, Paragraph 28. All they allege is that they requested information and it wasn't provided. They don't identify what information was requested, and that matters because under the law, the health plan doesn't have an obligation to just answer every question. The law is very clear that an obligation to answer questions depends on, exists only with respect to certain information, which they didn't request, and I will give Your Honor the citations. For example, the law says if the health plan used a database to calculate the QPA, disclose the database. Your Honor, this is at 45 CFR 149.140 D2. It says if a service code was used to determine the QPA, disclose that. If your contracted race included risk sharing and other features, disclose that. So the obligation to disclose depends on the question being asked. It's not an all-encompassing obligation. I have 37 seconds, and I want to make sure I say one thing, Your Honor, is going back to the question about the allegations in the complaint. It is without a doubt clear under the law of this circuit and every other circuit that not just in a FAA case but in a garden variety case, there must be an allegation of intentional fraud. The plaintiff must allege that the defendant acted intentionally. The word intent does not appear anywhere in the complaint. The word intent does not appear anywhere in the complaint. At the district court, this is the docket 59 pages 33 and docket 37 at pages 11 and 12, appellants conceded that they don't know whether Kaiser acted intentionally and they don't have evidence of intent. They said that crucial facts such as intent are not within our possession. They're within Kaiser's possession, and we cannot allege intent. We have to go do discovery on it. If Judge Pryor doesn't mind, I have one more question before you sit down. Before the No Surprises Act, this is returning a little bit to our previous line of discussion. Before the No Surprises Act, if Kaiser refused to pay a medical provider, what was the mode of collection for that provider, right? So, Your Honor, the answer would depend on the line of business. Say an air ambulance service, right? Say this exact scenario, and Kaiser said they said the cost is $50,000, and you said, well, we'll give you $500. How did that get litigated before the No Surprises Act? Your Honor, I'm going to try to give you the answer as quickly as I can without going too fast, but the appellants argue that they had a common law right to recover the reasonable value of the services. That is not actually correct. The market dysfunction that the NSA talks about, that Congress sought to address, was not quantum merit under common law. As a consequence of another FAA, the Federal Aviation Act and its Airline Deregulation Act, states could not tell air ambulance companies, could not regulate the price of air carriers. It was intended to promote commercial aviation. One unintended consequence was that air ambulance companies, where the consumer has no choice about what provider to use, were subject to these bills, and states couldn't tell air ambulance companies or anybody how much to charge. I conceded that there was dysfunction there, but when the air ambulance company decided that they wanted to enforce their price against the patient, what court claim did they bring? It varied, but typically it was a quantum merit claim, and it would allege under the Airline Deregulation Act that they're entitled to full bill charges, because the law permitted them to sue under quantum merit to get full bill charges. So it wasn't a true quantum merit, such that the court would determine market rates. It was a modified version of quantum merit that said, I'm entitled to the value of my services, and the value of my services is whatever I want, because Congress has said I can ask for whatever I want. There's a footnote in our brief, Your Honor, and it talks about this issue. There were cases going back in 2011, CalSTAR versus State Compensation Insurance Fund in California, where the state tried to regulate air ambulance prices in the workers' comp context. They sued. The state said we can't have a law because of the ADA. There is the De Quasi case, air EVAC case out of Colorado in 2018, the Scarlett case out of the District of Colorado, where the district court said that this notion that the air ambulance companies could demand and get full bill charges and nobody could tell them that that is or is not reasonable value was, quote, crazy. That's what the NSA sought to enforce. So it wasn't a common law right that Congress took away by the NSA. It was rather, Your Honor, a statutory law, statute, and unintended consequence of the Airline Deregulation Act that Congress sought to modify. I hope that answers your question, and thank you, Your Honor, for permitting me to go over. Thank you. Good morning, Your Honors. May it please the Court. Sam Spinner for Appley C2C Innovative Solutions. REACH did not address the dismissal of C2C this morning, and perhaps that's emblematic of the fact that IDR entities should not be dragged along as captive passengers in disputes that should be between a provider and an insurer. But based on the reply brief, the parties, as well as the government, appear to reach a consensus that there is no need to name the IDR entity as a defendant, provided that the district court has the authority to order the IDR entity to perform a new arbitration in the event it vacates the award. So we urge the court to accept this common ground between the parties and the government and interpret the act as giving the district court that authority. A contrary interpretation requiring the IDR entity to participate as a defendant any time a party challenges one of the hundreds of thousands of these awards that are issued each year will cause this system to crumble under the weight of financial burden that IDR entities like C2C makes it impossible for them to participate in this system, which is certainly not what Congress intended. The system is already teetering. There's already significantly more claims than they expected and significantly fewer certified IDR entities than they expected. And so under both a proper party analysis, as well as under common law arbitrator immunity principles, the district court correctly dismissed C2C from this litigation. We should not be involved in this because there is the right of the district court to order us to redo the dispute. We have never suggested otherwise would certainly comply with that order. And in the unlikely event an IDR entity did not comply, there are means to go to the departments and ask for intervention to seek to revoke certification. So there are avenues for relief. But we request that this court affirm the dismissal of the IDR entity. And unless your honors have any questions on this issue, I will rest on our brief. Thank you. Thank you for your time, your honors. Thank you, your honors. There is a lot of discussion of facts or supposed facts that are outside the four corners of the complaint in Kaiser's argument about whether there was confusion when the NSA went into effect. And none of that is, of course, squarely presented to the district court on the Rule 12 motion here. It's also not confusing that Kaiser was required by 45 CFR 149.140D to disclose its QPA and to certify the accuracy of that QPA in that initial explanation of payments. I would draw this court's attention to paragraph 26 as well as 28 in our complaint where we highlighted that obligation and then walked through specifically the April 21st explanation of payment that Kaiser provided. Kaiser also claims that we did not adequately allege intent. I would start by saying that under Rule 9B, it's black letter law, that intent can be generally alleged. In paragraph 35 of our complaint, we state that Kaiser has developed a scheme to minimize payments on air ambulance transports by misrepresenting the amount of its QPA to providers and RER entities. That paragraph talks about this intentional scheme. With respect to the FAA case law, I wanted to just note, again, we think that there is a nuanced statutory scheme here and that this court should be thoughtful about importing the FAA case law wholesale into this context. However, we're not fighting with this court's decisions in cases like Bonar and Nuvasiv about what the FAA requires. There are just some ways in which you can't transplant it without making some adjustments. My friend cited the clear and convincing evidence standard, but of course we're here not on a motion but on a complaint, and so clear and convincing evidence is not a standard that can simply just be transplanted. But we do think that we satisfy the requirements of the FAA for what it takes to plead fraud. On the question of subsection 1, again, whether there's a private right of action isn't before the court, and the court can, I think, apply subsection 2. There is additional language in the statute, though, that goes into that picture of whether the obligation of the insurers to pay. I can just provide a citation. 30 GG 112 P6 is a place where it directs the insurers directly to pay, but the binding language is crucial to that, and there's not like a separate cause of action somewhere. We do think that the subsection 1 is performing that function. I agree with that. So it's good to know that you think that that's the one spot where the statute might provide for that. Is it possible, though, that subsection 1 allows for a straight, especially when read in light of subsection 2, a straight enforcement act, a straight the decision was that you needed to pay us this. You haven't paid it. Please pay, as opposed to a challenge to the nature of the decision, absent, of course, misrepresentation or fraud, which is a separate question. Yes. So we definitely think that at a minimum that's what subsection is doing, and that is, again, there's district courts that have come out both ways on that question of whether there's a private right of action. We think, and the United States government thinks, that the correct interpretation is that subsection 1 allows enforcement directly by a provider against an insurer, and then logically the misrepresentation language would allow an insurer at a minimum to raise a defense in that. So if all this court wants to categorize subsection 1 as doing, that's fine as long as subsection 2 is also given a meaningful sort of safety valve for the providers, and we think that the plain language of subsection 2 does create such a safety valve by allowing us to obtain judicial review and vacater if there's fraud. We think that if anything is fraud in this process, misrepresenting an insurer's QPA, which by every attribute of the statutory scheme reinforces as a key input into the process, that that would rise to the level of fraud. Otherwise it's very difficult to imagine what would. What would be your response to the expression of risk that if you can bring a claim like this, then the system will grind to a halt, right? I think it's true that there have been orders of magnitude more claims than I think Congress anticipated. Wasn't the purpose of this statute to keep these claims, first of all to solve a problem, but another purpose by importing the Arbitration Act was to keep these claims out of court? I think it's important to recognize that what's alleged here is an affirmative intentional misrepresentation and this sort of bait and switch where one QPA is provided at the outset and then a separate lower one is provided in the IDR process. If a party has simply made a mistake, that would not rise to the level of fraud, but that's not what we think the pleading here alleges. Again, we have to give some... Congress went out of its way to include a judicial review provision and that judicial review provision incorporates by reference those four subsections in 10A of the FAA. There have to be instances where if a party commits fraud during the course of the IDR that that would be basis for vacater. We think that the plain language, if you take this court's FAA cases and the facts of this alleged in the complaint, those marry together and are an affirmative instance that those satisfy the fraud. But this isn't going to mean that every time a party commits a foot fault in the IDR process that that's a basis for somebody to come in with Rule 9B applying, with the FAA standards applying and be able to file a good faith complaint in a federal district court. Call our next case.